# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TRACEY GLENN TURNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **5:16-cv-739-AKK** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Tracey Glenn Turner brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons stated below, the ALJ's decision, specifically her findings regarding Turner's mental residual functional capacity ("RFC"), is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinion of Turner's treating psychiatrist, Dr. Miles O'Hanlon, and other related evidence. Therefore, the Commissioner's decision is remanded for further proceedings consistent with this opinion.

# I.     PROCEDURAL HISTORY

Turner filed his application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on July 16, 2014, alleging a disability onset date of June 30, 2014. (R. 121), due to post-traumatic stress disorder (PTSD), depression, hypertension, diabetes, gout, acid reflux, sleep apnea, and hyperthyroidism, (R. 176). After the SSA denied his application, Turner requested a hearing before an ALJ. (R. 75). The ALJ subsequently denied Turner's claim, (R. 9–11), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1–3). Turner then filed this action pursuant to §205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

# II.     STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III. STATUTORY AND REGULATORY FRAMEOWRK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological,

or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;
(2)     whether the claimant has a severe impairment;
(3)     whether the impairment meets or equals one listed by the Secretary;
(4)     whether the claimant is unable to perform his or her past work; and
(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.    THE ALJ'S DECISION

In performing the five step analysis, the ALJ found that Turner has not engaged in substantial gainful activity since June 30, 2014, and therefore met Step One. (R. 14). Next, the ALJ found that Turner satisfied Step Two because he suffered from the severe impairments of diabetes mellitus, gout, an anxiety

disorder, and PTSD. (R. 14). In this step, the ALJ recognized that Turner also had diagnoses of "chronic kidney disease, a hernia, hypertension, and obstructive sleep apnea," but found that "these impairments have not resulted in any significant limitations and are therefore found to be non-severe." (R. 14). The ALJ then proceeded to the next step and found that Turner did not satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 15).

Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that Turner has the RFC to "perform light work," but that Turner "should avoid areas with sudden loud noises. . . . be limited to jobs involving infrequent and well-explained workplace changes . . . [and] casual interaction with co-workers and the general public." (R. 16). In light of Turner's RFC, and the testimony of a vocational expert, the ALJ determined that Turner was incapable of performing his past relevant work as a procurement analyst, buyer expediter, or logistics specialist. (R. 20). Accordingly, the ALJ turned to Step Five, where, after considering Turner's age, education, work experience, RFC, and the testimony of a vocational expert determined that "there are jobs that exist in significant numbers in the national economy that [Turner] can perform." (R. 21). Therefore, the ALJ determined that Turner was not disabled. (R. 21–22).

# V. ANALYSIS

Turner's primary contention on appeal is that the ALJ erred in the determination of Turner's mental RFC.[1] More specifically, Turner contends that the ALJ improperly evaluated the evidence related to Turner's PTSD diagnosis. Doc. 12 at 3. The court agrees.

As it relates to the PTSD, the ALJ noted initially that Turner was diagnosed with PTSD in October 2011 and had a global assessment functioning (GAF) score of 58. (R. 18). The ALJ then pointed out that a score of 58 "is consistent with moderate symptoms or moderate limitations in occupational, social, or school functioning." (R. 18) (citing the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders). Next, the ALJ discussed that Turner left his job in June 2014 due to PTSD, and had a GAF score of 49 around that time. (R. 18–19). Relevant here, the ALJ stated that the opinion from Dr. O'Hanlon that, in light of the PTSD, Turner "was unable to balance stress and handle anxiety, . . .

---

[1] Turner challenges separately the ALJ's rejection of the 80 percent disability rating Turner received from the Veterans Administration, noting correctly that he ultimately received a 100 percent unemployability rating from the VA. Doc 12 at 4. While the VA's disability rating is entitled to great weight, the rating is not binding on the Commissioner. *See Brady v. Heckler,* 724 F.2d 914, 921 (11th Cir. 1984); *Olson v. Schweiker,* 663 F.2d 593, 597 n.4 (5th Cir. 1981). In fact, where, as here, an agency uses a different standard for disability than the Commissioner, the ALJ may afford that agency's finding less than substantial weight. *See Hacia v. Comm'r Soc. Sec.,* 601 F. App'x 783, 786 (11th Cir. 2015). Moreover, the ALJ is not required to state how much weight she assigns to the VA determination and, so long as that determination is "seriously considered [when the ALJ makes] his own determination," the ALJ does not err in failing to give the VA disability determination great weight. *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 857 (11th Cir. 2013). For all these reasons, the ALJ did not err in her evaluation of Turner's VA disability determination. (*See* R. 19) (finding the VA's determination "unpersuasive [. . . ] under the rules promulgated by the Social Security Administration.").

[and] unable to do the work, whether part-time or full-time" was entitled to little weight because it was inconsistent with the treatment Turner received at the Veterans Administration (VA). (R. 19). Essentially, the ALJ focused on the lack of hospitalization in the VA record to reach this finding.

There are several issues with the ALJ's reasoning that warrant a remand. As an initial matter, as a treating physician,[2] in evaluating the evidence, the ALJ is required to afford great weight to Dr. O'Hanlon's opinion that Turner's PTSD had worsened over time and that Turner was unable to work due to poor concentration and inability to handle anxiety, (*see* R. 597–98), unless the ALJ articulates good cause, *see Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). Grounds for discounting the opinion of a treating physician exist where the doctor's opinion is conclusory, not supported by the evidence, inconsistent with the doctor's own medical records, or where the evidence supports a contrary finding. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Dr. O'Hanlon's treatment notes show that after Turner's initial PTSD diagnosis in 2011, Turner regularly returned for follow-up treatment and consistently evinced a moderate level of anxiety, depressive thoughts, sleep disturbances, and problems with concentration before he ultimately worsened to the point that Dr. O'Hanlon considered Turner unable to work. (*See* R. 235–258, 597–98). To the extent that the ALJ believes good cause

_____

[2] Dr. O'Hanlon treated Turner for several years. (*See, e.g.,* R. 252–258, 587–595).

exists for disregarding this opinion, the ALJ failed to fully explain her rationale other than a lack of hospitalizations and the fact that Turner underwent a background check that would allow his wife to run a daycare out of their home. (*See* R. 19). However, hospitalizations are not always dispositive in the determination of the severity of an impairment, and "even a mild mental impairment may prevent a claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (citing *Tucker v. Schweiker*, 689 F.2d 777, 780 (8th Cir. 1982)); *see also Lewis,* 125 F.3d 1436, 1440 (11th Cir. 1997) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.") (citing 20 C.F.R. § 404.1527(d)(2)).

Second, remand is also warranted because the ALJ failed to address Turner's 2014 GAF score of 49. The DSM-IV defines GAF scores of 41-50 as indicative of severe impairments. *See McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006). Although the Commissioner correctly points out that, "the GAF scale does

not have a direct correlation to the severity requirements in [the] mental disorders listing," *Nye v. Commissioner of Soc. Sec.,* 524 F. App'x 538, 545 (11th Cir. 2013) (citing 65 Fed. Reg. at 50764–65), the GAF scale does not, however, exist in a vacuum. In fact, the SSA has noted that the GAF is a diagnostic tool that aids the ALJ in assessing a claimant's mental impairments:

> [. . .] an individual's treating sources, and other professional healthcare providers, when available, normally can provide valuable additional functional information. For instance, as part of the multiaxial evaluation system described in the DSM-III-R, treating sources may assess the individual's psychological, social, and occupational functioning on the Global Assessment of Functioning (GAF) Scale. Even if the treating source does not utilize the GAF Scale, the source should be able to provide observations and judgments about the individual's functional abilities and limitations. We also explain that nonmedical sources may provide such valuable information.

56 Fed. Reg. 33130-01.

Relevant here, instead of addressing the lowered score, the ALJ unilaterally determined that the GAF score did not comport with the treatment records and that it "very likely had not been updated by his treating source when the inputs were made on each visit." (R. 19). There is no evidence in the record to support this statement. In fact, because the ALJ has essentially substituted her opinion for that of Turner's treating physician, remand is warranted on this ground alone. *Marbury v. Sullivan,* 957 F.2d 837, 840–41 (11th Cir. 1992) ("An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own unformed medical evaluations for those of claimant's treating physicians."). Alternatively, to the

extent that the ALJ actually considered the lower score in her analysis, remand is warranted because the court is unable to discern this fact from the current record. *See Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1172, 1174 (N.D. Ala. 2006) (the ALJ's failure to address a low GAF score and discounting the treating physician's opinion based on the ALJ's own opinion warranted remand); *see also Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct a meaningful review . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case.").

Finally, in addition to failing to address the decreased GAF score and giving little weight to Dr. O'Hanlon's opinion, the ALJ also declined to give any weight to the assessments by Turner's vocational readjustment counselor, vocational rehabilitation counselor, and social worker, that Turner's PTSD prohibited him from working, (*See* R. 19) (rejecting these assessments because they are not from "acceptable medical sources"), and gave little weight to the opinion of the state agency medical consultant that Turner has moderate limitations and requires a flexible work schedule, arguing that this opinion was not supported by the record. (R. 20). These findings ignore that once a medically determinable impairment is found by an acceptable medical source, i.e., Dr. O'Hanlon, testimony from other

sources may be used to show the severity of the impairment and how it affects the claimant's ability to work. *See Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1188 (N.D. Ala. 2006). *See also Miles v. Barnhart*, 410 F. Supp. 2d 1113, 1116–17 (N.D. Ala. 2006) (finding error in the rejection of a treating therapist as medical source because such a provider is qualified to comment on a condition's severity and effect on ability to work). As such, consistent with the caselaw, the ALJ is required to provide an explanation before disregarding these corroborative sources of evidence.

"[W]hen the ALJ fails to state 'with sufficient clarity' the grounds for his evidentiary decisions, [courts] will not affirm 'simply because some rationale might have supported the ALJ's conclusion,' and instead [will] remand 'for further findings at the administrative level.'" *Dempsey v. Comm'r of Soc. Sec.,* 454 F. App'x 729, 732 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1514–16 (11th Cir. 1984). Based on this record, the court finds that the ALJ's treatment of the medical opinion evidence was not sufficient to allow the court to conclude what rationales supported her decision.

## CONCLUSION

The court concludes that in determining that Turner is not disabled, the ALJ applied incorrect legal standards. As such, the Commissioner's final decision is remanded for further proceedings consistent with this opinion. Specifically, on

remand, the ALJ is directed to explain the good cause, if any, for giving little weight to Dr. O'Hanlon's opinion, address the lower GAF score and fully explain why the ALJ believes the medical evidence does not support such a score, and re-evaluate the opinions from the non-acceptable medical sources in light of Dr. O'Hanlon's opinion that Turner has a medically determinable impairment. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 5th day of May, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE